**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MARILYN STACEY-SUGGS | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:12-CV-3339-RWS |
| BOARD OF REGENTS OF THE | : | |
| UNIVERSITY SYSTEM OF | : | |
| GEORGIA, d/b/ a Savannah | : | |
| State University, and CHERYL | : | |
| DAVENPORT DOZIER, in her | : | |
| official capacity as President of | : | |
| Savannah State University and in | : | |
| her individual capacity, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

This case is before the Court for consideration of the Final Report and Recommendation [46] of Magistrate Judge Janet F. King. After reviewing the Report and Recommendation ("R&R"), the Parties' Objections [52 & 53] and the Parties' Responses to Objections [54 & 55], the Court enters the following order.

In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28

U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." U.S. v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation," FED. R. CIV. P. 72, Advisory Committee Note, 1983 edition, subdivision(b).

In the R&R, Judge King, noted that Plaintiff asserted a claim against Defendant Board of Regents ("Regents") based on the Equal Pay Act. After Defendants moved for summary judgment, Plaintiff notified the court that she does not oppose the granting of the motion on that claim or the corresponding claim for injunctive relief. Accordingly, Judge King recommends that the motion for summary judgment [27] be **GRANTED** as to Plaintiff's Equal Pay Act claim. The undersigned adopts this recommendation. The Court will now address the claims as to which objections were filed by the parties.

**Sexual Discrimination Claims**

In Count one (1) of her Complaint, Plaintiff alleges that Defendant Regents violated Title VII by subjecting her to gender/sexual discrimination.  In Count three (3), Plaintiff brings a sexual discrimination claim against Cheryl Dozier, ("Dozier") in her individual capacity based on the Equal Protection Clause. Specifically, Plaintiff alleges that Defendants subjected her to  sexual discrimination by terminating her employment as Athletic Director ("AD") and placing her in a less prestigious, lower-paying position.  In the R&R, Judge King found that because Plaintiff relies on circumstantial evidence, the framework articulated in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817, 1824-25 (1973) would be used to evaluate the claim.

Utilizing that framework, Judge King found that Plaintiff is able to establish a *prima facie* case of sexual discrimination.  Judge King further found that Defendants offered legitimate nondiscriminatory reasons for terminating Plaintiff's employment as AD and that Plaintiff failed to cast sufficient doubt on the Defendants' proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the proffered legitimate reasons were not what actually motivated Defendants' conduct.

3

AO 72A
(Rev.8/82)

In her objections [52], Plaintiff challenged the conclusion that no reasonable jury could find that Defendants proffered nondiscriminatory reasons for terminating Plaintiff as AD were pretextual. In the objections, Plaintiff relies upon the same arguments asserted in the briefing on the Motion for Summary Judgment. Plaintiff seeks to create issues of fact that are not based upon evidence actually in the record. For example, Plaintiff takes issue with Judge King relying on Dozier's testimony about statements made to her by Plaintiff at their first meeting. Plaintiff asserts that Dozier did not corroborate that testimony. However, while Defendant may not have corroborated the testimony, Plaintiff never provided any contrary evidence that would have created a genuine issue of material fact. In her analysis, Judge King considered the evidence that was before the Court.

The Plaintiff also argues that Judge King improperly failed to construe the evidence in the light most favorable to Plaintiff, but the Court finds that Judge King did consider the evidence in the light most favorable to Plaintiff and reached the correct conclusion that no reasonable jury could find pretext. After conducting a de novo review of this issue, the Court agrees with the conclusions reached by Judge King. Therefore, the R&R is received with approval and adopted as the Opinion and Order of this Court with regard to Plaintiff's sexual discrimination claims.

4

Based on her conclusion that a reasonable jury could not conclude that Dozier fired Plaintiff on the basis of her sex, Judge King also found that Dozier is entitled to qualified immunity because Plaintiff failed to show that Dozier violated a statutory or constitutional right when she terminated Plaintiff's employment as AD.  Having adopted Judge King's conclusions regarding the sexual discrimination claims, the Court agrees that Dozier is entitled to qualified immunity on the individual capacity claim.

**Pattern or Practice Claim**

Plaintiff also alleged that Savannah State University ("SSU") has a pattern and practice of gender-based discrimination, both within the Athletics Department and elsewhere in the University.  Judge King found that Plaintiff failed to offer sufficient evidence to show that sexual discrimination against women is SSU's standard operating procedure.  Plaintiff offered no statistics in support of her pattern or practice claim, and the anecdotes she offered were inadequate to permit a reasonable jury to find in her favor.  In her objections, Plaintiff cites to other evidence in the record that she contends supports her pattern or practice claim but was not considered by Judge King.  The Court has reviewed that evidence and reaches the same conclusion reached by Judge King.  There is not sufficient evidence to show that sexual discrimination against women is SSU's standard

5

AO 72A
(Rev.8/82)

operating procedure.  Therefore, the R&R is received with approval and adopted as the Opinion and Order of the Court with regard to the pattern or practice claim.

**Retaliation Claim**

Plaintiff alleges that Defendant Regents subjected her to retaliation in violation of Title VII when her position as Associate Director of Student Development ("ADSD") was designated as "interim" because she filed an EEOC charge in December 2011.  "To make out a *prima facie* case of retaliation, a plaintiff must show: (1) that she engaged in an activity protected under Title VII; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." Kidd v Mando American Corp., 731 F.3d 1196, 1211 (11th Cir. 2013). In the R&R, Judge King found that Plaintiff engaged in protected activity by filing the EEOC charge of discrimination on December 27, 2011.  However, Judge King found that Plaintiff failed to offer evidence that would permit a reasonable jury to conclude that she suffered an adverse employment action as a result of the filing of the EEOC charge and that she failed to establish a causal connection between that protected activity and the complained-of  adverse action.  In her objections, Plaintiff contends that there is evidence sufficient to create a question of fact for the jury as to whether there was

6

an adverse action and whether that action was caused by Plaintiff's protected activity.

The facts concerning the nature of the ADSD position are unclear. First, it appears that the position was a new position "created" by Dr. Irvin Clark, Vice President of Student Affairs ("Clark"). (DSMF [27-14] ¶ 36). Plaintiff was appointed ADSD beginning July 14, 2011. (R&R [46] at 8). Her personnel file reflected that this position was classified as "temporary." (Id.) Plaintiff was advised by a Human Resources employee that the job classification of "temporary" meant that the job had no ending date, that it could be permanent. (Id.; Pl,'s dep. [38-1] at 183). She also retained employee benefits as ADSD. (Id.). According to the Human Resources Policies of the Regents, an "interim" position "shall normally be for no less than one month and no more than twelve months." (Human Resources Administrative Practice Manual [27-8] at 2). Those policies describe an "interim" position as one "used if an administrator resigns and a replacement is sought or if an administrator is absent for a longer period of time (usually exceeding three months)." (Id,). On June 18, 2012, Plaintiff was advised by her supervisor, Jacqueline Awe, that because Plaintiff's ADSD position was classified as "interim," Awe would be initiating a search to fill the position shortly. (Dozier dep. [27-8], Ex.24).Thus, Plaintiff contends that she suffered an adverse action

7

when she was moved from a temporary position with no set end date to an interim position with a duration of one to twelve months.

A plaintiff bringing a retaliation claim "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa FE Railway Co. V. White, 126 S. Ct. 2405, 2415 (2006) (internal citations and quotations omitted). As pointed out in the R&R, this standard is "decidedly more relaxed" than that used in discrimination cases. Crawford v. Carroll, 529 F.3d 961, 973 (11th Cir. 2008). The undersigned concludes that Plaintiff has met this burden. A jury could find that changing Plaintiff from temporary to interim status was an adverse employment action.

The final prong Plaintiff must establish is a causal connection between her protected activity and the employer's adverse action. "To establish the causal connection required by the third prong, the plaintiff must show that (a) the decision-makers were aware of the protected conduct; and (b) the protected activity and the adverse employment action were not wholly unrelated. Close temporal proximity may be sufficient to show that the protected activity and the adverse employment action were not wholly unrelated for a *prima facie* case. However,

8

temporal proximity is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Gerard v. Bd. of Regents of State of Ga., 324 Fed. Appx. 818, 826 (11th Cir. 2009) (internal citations and quotations omitted).

On December 27, 2011, Plaintiff filed a charge of discrimination with the EEOC. (Id. at 10). She alleged that she had been subjected to sexual discrimination when she was terminated from her AD position on July 5, 2011.(Id.). In March 2012, her supervisor, Jacqueline Awe, informed her that her position was classified as "interim." (Id.). In April 2012, Plaintiff was given a 6-month performance evaluation as ADSD. (Id.). The evaluation did not indicate that her position was interim, and it referenced goals "for the next academic year." (Id.).

On June 18, 2012, Awe sent Plaintiff an email stating: "[I]t has come to my attention ... that your name is among the list of personnel who currently hold interim positions on our campus ... Your position ... is documented as interim and as a result, I will be initiating a search process to begin shortly ... ." (Id. at 10-11). Awe informed Plaintiff that the search process was necessary to comply with a Regents policy stating that interim positions shall normally be for no more than

9

twelve (12) months. (Id. at 11). Plaintiff was included in a list with six (6) other employees who are classified as interim and subject to the search process. (Id.). The list was prepared by Dr. Sandra Best, Director of Human Resources, as part of her duties as the Director and not at the direction of Dozier or Clark. (Id.). Best provided the list to Clark who provided it to Awe. (Id.). Plaintiff's employment was terminated January 28, 2013. (PSMF [38-7] ¶60).

On July 12, 2012, Plaintiff filed a second charge of discrimination with the EEOC. (Id.). Plaintiff alleged that she had been subjected to retaliation on June 18, 2012, when she "was informed for the first time by SSU that it considers [her] current position an 'interim' position." (Id.). Plaintiff also asserted, "I was never told that this was an interim position, and I believe SSU has designated it as such in retaliation for my complaint of discrimination." (Id.). Plaintiff served as ADSD for a year and a half, from July 2011 until January 2013. (Id. at 11-12). Plaintiff also points out that the personnel form showing that Plaintiff's position is "interim" appears to have been altered by adding "interim" at a different time based on the designation being in a different font from the other entries found on the same line of the document. (Pl.'s Obj. [52] at 21).

The Court concludes that this evidence would support a finding by a jury that Plaintiff's status was changed from "temporary" to "interim" at some time

10

after she filed her first EEOC complaint. The protected activity took place on December 27, 2011. In the R&R, the assumption is made that the earliest the change in status could have occurred was March 2012, which was the date Plaintiff first learned about the change. However, the evidence does not necessarily require that conclusion. In March 2012, Plaintiff was told that her position was interim, but she was not told when the charge actually took place. We only know that the change occurred prior to March 2012. When one considers this temporal proximity along with the other facts supporting a claim that Plaintiff's status was changed after she was appointed, the Court concludes that the evidence, construed more favorably to Plaintiff creates a genuine issue as to whether the protected activity and the adverse action were wholly unrelated.

The other evidence supporting this conclusion, includes Plaintiff's originally being told her position was temporary with no set ending date. Also, the entry of the "interim" designation on her personnel form in a different font than all of the information contained therein suggests that the "interim" designation was made at a time subsequent to her initial appointment. The ADSD position to which she was appointed does not fit the definition of "interim" positions in the Regents' Human Resources Policy. Her direct supervisor apparently was unaware that Plaintiff was "interim" until June 2012 when Awe sent an email to Plaintiff stating she had

11

become aware of the status. Based on these facts and the temporal proximity of the adverse action, the Court concludes Plaintiff satisfies the second prong of the Gerard test.

However, Plaintiff fails to satisfy the first prong of the test in Gerard: the decision-maker was aware of the protected conduct. Plaintiff has failed to identify the decision-maker for her retaliation claim. The party accused of discrimination is Dozier, but as pointed out in the R&R, "Plaintiff testified that she has no evidence that Dozier had any role in deciding whether her position as ADSD was temporary or interim." (R&R at 44). Plaintiff "must prove that the specific decision-maker was aware of [her] protected conduct." Hatcher v. Precoat Metals, 812 F. Supp.2d 1287, 1294 (N.D. Ala. 2011). In Hatcher, the plaintiff could not "pinpoint anybody in particular" as having retaliated against him. Id. He did not know who was responsible for his layoff. Id. The plaintiff argued that he should be required only to "show that the 'corporate entity' was aware of his complaint." Id. at 1293. The court rejected the argument based on the Eleventh Circuit's decision in Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791 (11th Cir. 2000). In Brungart, the court was "not persuaded to adopt [plaintiff's] imputed knowledge theory." Id. at 800. The court held that "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection." Id. at 799; (citing Clover

12

v. Total System Services, Inc., 176 F.3d 1346 (11th Cir. 1999). A plaintiff still must prove knowledge of the protected conduct by the decision-maker. Id. In the absence of an identified decision-maker, Plaintiff is unable to satisfy the first prong of the Gerard test and is thus unable to establish the causal connection between her protected conduct and the adverse employment action. Therefore, her retaliation claim fails.

As part of the analysis of the retaliation claim, Judge King addressed the Defendant's concern that Plaintiff may try to allege "SSU's" decision to hire someone else for the permanent "ADSD" position was retaliation. Judge King noted that the Defendants asserted that Plaintiff cannot bring a retaliation claim based on the decision to hire another candidate because Plaintiff did not include that claim in her EEOC charge filed in July 2012. Judge King noted that Plaintiff had clarified that she "does not claim the selection of another candidate as permanent ADSD was a separate incident of retaliation" but it "was the inevitable consequence of the facts alleged in her amended EEOC charge, i.e., the designation of her job as interim." ([38] at 20). Judge King concluded that "[b]ecause the decision to designate her position as interim is the adverse action about which Plaintiff complains, the Court finds that she was not required to bring a separate EEOC charge after her interim position ended. See Gregory v. Ga. Dept. of

13

Human Resources, 355 F.3d 1277, 1280 (11th Cir. 2004) (holding that a 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'") (citations omitted)." ([R&R 46] at 37-38, n.9).

Defendants object to this conclusion asserting that it was not a foregone conclusion that Plaintiff would not be selected as permanent ADSD. Therefore, Defendants assert that Plaintiff's separation was not inevitable. While it is true that Plaintiff could have been hired for the position following her termination, it was a foregone conclusion that her term of employment was finite and was about to end. Thus, the termination of her employment based upon its "interim" status was reasonably expected to grow out of the charge of discrimination. What is not included in her charge is any claim based upon the hiring decision of the person who would replace her in the position. In other words, Plaintiff may not assert a claim based upon the hiring decision of the person who subsequently filled the position. With that clarification, the conclusion of Judge King is adopted by the Court.

Based on the foregoing, Defendant's Motion for Summary Judgment [27] is **GRANTED**.

14

**SO ORDERED**, this  3rd  day of September, 2014.

_____
**RICHARD W. STORY**
United States District Judge

15